IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA :

vs. : CRIMINAL NO. 11-0012-KD

CHRIS VERNON :

## ORDER

This cause is before the Court on the United States' motion to quash subpoena duces tecum mailed to the Department of State (Doc. 488), as supplemented (Doc. 503). The foregoing motion has been referred to the undersigned for resolution pursuant to 28 U.S.C. § 636(b)(3) and Local Rule 72.2(b)(2). Based upon a consideration of the contents of the motion to quash, as supplemented, it is determined that the motion to quash should be **GRANTED**.

## FACTUAL BACKGROUND

The trial in this complex healthcare fraud case (*see* Doc. 256, Second Superseding Indictment) began yesterday's date, January 30, 2012. On January 12, 2012, counsel for Chris Vernon mailed (via overnight mail and United States mail) a letter addressed to the Legal Adviser for the United States Department of State, Harold Hongju Koh, and attached thereto a trial subpoena *duces tecum*, seeking testimony and the production, on

1

the first day of the trial, of six categories of documents. (*See* Doc. 503, Attachments.)[1] The cover letter, dated January 12, 2012, reads, in relevant part, as follows:

> Pursuant to 22 C.F.R. § 171.1 *et seq.*, we are sending this subpoena request for testimony and records related to Konstantinos "Gus" Dimitrelos's association with the United States State Department.
>
> Pursuant to 22 C.F.R. § 171.5, this information is relevant in a criminal proceeding set for trial in the Southern District of Alabama in which the United States relies upon the forensic analysis and expert testimony of Konstantinos "Gus" Dimitrelos, who claims, *inter alia*, to be associated with the United States State Department and to have conducted "cyber investigations, digital forensics, network audits, ESI analysis, training, forensics curriculum development, and cellular forensics/triangulation for the US Department of State." Mr. Dimitrelos also claims to be "a Subject Matter Expert on cyber forensics and investigations for the US Department of State, anti-Terrorism Cyber program," as well as "an instructor for the US Department of State, anti-Terrorism Cyber program" in Mexico, Malaysia, Antigua, and the Bahamas. Mr. Dimitrelos finally claims to have "evaluated the anti-terrorism program in Pakistan, Turkey, and Mexico."

---

[1] The face of the subpoena reflects a request for testimony but is addressed only to the Office of the Legal Adviser for the United States Department of State (*see* Doc. 503, SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE), as opposed to a particular person/employee in that office, *compare, e.g.,* 22 C.F.R. § 172.4(a) ("No employee of the Department shall, in response to a demand or request in connection with any litigation, whether criminal or civil, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Director General of Foreign Service and Director of Personnel (M/DGP) or the Legal Adviser (L), or delegates of either, following consultation between the two bureaus, or as authorized in § 172.4(b).") *with* Fed.R.Crim.P. 17(a) ("A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the *witness* to attend and testify at the time and place the subpoena specifies." (emphasis supplied)). The failure of the subpoenaing party to identify a particular Department employee/witness to testify at trial is a sufficient basis, in itself, to quash the subpoena or otherwise, not require the State Department to comply with the subpoena.

Because Mr. Dimitrelos is a private business person who performs computer forensic and cellular phone signal tracking services for hire, it is our concern, as it is likely the concern of the United States Department of State, that Mr. Dimitrelos is testifying accurately as to the extent of his involvement and association with the United States State Department. Mr. Dimitrelos might be artificially inflating his personal credibility and reliability, as well as the credibility and reliability of his own methods, by invoking the name of the United States State Department and other government agencies. Therefore, testimony and associated records either confirming or denying Mr. Dimitrelos's claimed connections with the State Department is both relevant and important to the above referenced criminal proceeding.

(Doc. 503, Attached Letter, at 1-2 (internal citation omitted).) In turn, the request for testimony and documents reads, in part, as follows:

Please produce certified copies of unclassified U.S. State Department records on the following subject:

Personnel, training records, and files related to Konstantinos "Gus" Dimitrelos, including, *but not limited to*:

- The complete personnel file of Mr. Dimitrelos.
- Cyber investigations, digital forensics, network audits, electronically stored data analysis, training, forensics curriculum development, and cellular forensics or cellular signal triangulation performed by Mr. Dimitrelos for or on behalf of the U.S. State Department.
- Any certification or qualification of Mr. Dimitrelos as a "Subject Matter Expert on cellular technology" by the U.S. State Department "anti-Terrorism Cyber Program."
- Any record or documentation related to Mr. Dimitrelos having evaluated any anti-terrorism program in Pakistan, Turkey, or Mexico for or on behalf of the U.S. State Department or any other organization.
- Any record or documentation related to Mr. Dimitrelos being an instructor for the "US Department of State,

> anti-Terrorism Cyber Program" in Mexico, Malaysia, Antigua, the Bahamas, or elsewhere.
> - Any record or documentation related to Mr. Dimitrelos authoring any "Network Security and Intrusions Investigation course for the US Department of State, anti-Terrorism Cyber Program."

(*Id.*, Exhibit A to SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE, at 1 (emphasis supplied).)

The face of the January 12, 2012 letter penned by one of Chris Vernon's attorney to the Legal Adviser for the United States Department of State, Harold Koh, reflects that the letter and subpoena were received by the State Department on January 24, 2012. (*See* Doc. 503, Attached Letter.) The United States filed its motion to quash this subpoena on January 27, 2012, at 5:30 p.m. (Doc. 488).

> Vernon's subpoena was received by the Department of State on January 24, **five days** before the appearance date. The subpoena calls for production of "[a]ny record or documentation" concerning a number of sensitive and classified areas. While the subpoena does state it seeks only "unclassified" records, compliance would obviously require a search of numerous sensitive files that could well be scattered throughout the Department. Pursuant to regulations and policies governing the disclosure of sensitive information, the documents would need to be reviewed and, where possible, redacted before they could be disclosed. Compliance would require the time and effort of State Department personnel who would otherwise be conducting official business, and performing the duties directly related to the Department's diplomatic mission. See: 22 C.F.R. 172.8(a)(4), (7). The compliance with the subpoena would be unduly burdensome. 22 C.F.R. 172.8(a)(1).
>
> Further, the subpoena is far beyond the discovery allowed by Rule 16 of the Federal Rules of Criminal Procedure. As Mr. Dimitrelos is an expert, the United States has complied with the requirements of Rule

16(G). As the subpoena calls for information far beyond that, compliance would be inappropriate under the applicable rules of discovery. 22 C.F.R. 172.8(a)(4).

. . .

The subpoena should be quashed as it is not in compliance with the regulations of the Department of State. These regulations are valid. *Touhy v. Ragen,* 340 U.S. 462 (1951). The subpoena should be quashed.

(Doc. 488, Memorandum in Support of Motion to Quash, at 3-4.)

As aforesaid, the trial of this cause began yesterday's date, January 30, 2012, the same date that this motion was referred to the undersigned.

## **CONCLUSIONS OF LAW**

In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), the Supreme Court ruled that the Attorney General may lawfully make regulations instructing employees with regard to production of documents in litigation. *Id*. at 470, 71 S.Ct. at 420; *see also id.* at 468, 71 S.Ct. at 419 ("When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious."). The Attorney General has established such regulations, which can be found at 28 C.F.R. §§ 16.21 through 16.29. Similarly, as they are crucial for a proper decision in this case, the Department of State has established its own *Touhy* regulations, which may be found at 22 C.F.R. §§ 172.1 through 172.9. *Cf. Moore v.*

5

*Armour Pharmaceutical Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) ("Similar regulations are commonplace among other federal agencies, and have been upheld by the federal courts."). These regulations set up a procedure by which State Department officials make decisions about whether an employee called upon to testify or to produce documents in litigation is permitted to disclose the requested information, which information is summarized in a "demand" by the individual seeking the information. *See, e.g.*, 22 C.F.R. § 172.4 (2010).

> **§ 172.4  Testimony and production of documents prohibited unless approved by appropriate Department officials.**
>
> (a)  No employee of the Department shall, in response to a demand or request in connection with any litigation, whether criminal or civil, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Director General of Foreign Service and Director of Personnel (M/DGP) or the Legal Adviser (L), or delegates of either, following consultation between the two bureaus, or as authorized in § 172.4(b).
>
> .   .   .
>
> (c)  No employee shall, in response to a demand or request in connection with any litigation, produce for use at such proceedings any document or any material acquired as part of the performance of that employee's duties or by virtue of that employee's official status, unless authorized to do so by the Director General of Foreign Service and Director of Personnel, the Legal Adviser, or the Assistant Secretary of State for Consular Affairs, or the delegates thereof, as appropriate, following consultations between the concerned bureaus.

## § 172.5 Procedure when testimony or production is sought; general.

(a) If official Department information is sought, through testimony or otherwise, by a request or demand, the party seeking such release or testimony must (except as otherwise required by federal law or authorized by the Office of the Legal Adviser) set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought. Where documents or other materials are sought, the party should provide a description using the types of identifying information suggested in 22 CFR 171.10(a) and 171.31. Subject to 172.7, Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 172.4. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). The Office of the Legal Adviser may waive this requirement in appropriate circumstances.

. . .

(c) The appropriate Department official designated in § 172.2 will notify the Department employee and such other persons as circumstances may warrant of its decision regarding compliance with the request or demand.

(d) The Office of the Legal Adviser will consult with the Department of Justice regarding legal representation for Department employees in appropriate cases.

## § 172.6 Procedure when response to demand is required prior to receiving instructions.

(a) If a response to a demand is required before the appropriate Department official designated in § 172.4 renders a decision, the Department will request that either a Department of Justice attorney or a Department attorney designated for this purpose:

(1) Appear with the employee upon whom the demand has been made;

(2) Furnish the court or other authority with a copy of the regulations contained in this part;

(3) Inform the court or other authority that the demand has been, or is being, as the case may be, referred for the prompt consideration of the appropriate Department official; and

(4) Respectively request the court or authority to stay the demand pending receipt of the requested instructions.

. . .

## § 172.7  Procedure in the event of an adverse ruling.

If the court or other judicial or quasi-judicial authority declines to stay the effect of the demand in response to a request made pursuant to § 172.6, or if the court or other authority rules that the demand must be complied with irrespective of the Department's instructions not to produce the material or disclose the information sought, the employee upon whom the demand has been made shall respectfully decline to comply with the demand, citing this part and *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951).

## § 172.8  Considerations in determining whether the Department will comply with a demand or request.

(a) In deciding whether to comply with a demand or request, Department officials and attorneys shall consider, among others:

(1) Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose;

(2) Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;

. . .

(4) The need to conserve the time of Department employees for the conduct of official business; [and]

(7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties[.]

22 C.F.R. §§ 172.4(a) & (c), 172.5(a), (c) & (d), 172.6(a)(1)-(4), 172.7 and 172.8(a)(1), (2), (4) & (7) (2010).

Because a response to Chris Vernon's "demand" was due on January 30, 2012, that is, before the appropriate Department official designated in § 172.4 could render a decision, the State Department handed this matter off to a Justice Department attorney to handle, *see* § 172.6, and since that attorney has filed a motion to quash subpoena, thereby indicating that Chris Vernon's demand/subpoena will not be complied with (*see* Doc. 488), it is incumbent upon the undersigned to consider the relevant provisions of Federal Rule of Criminal Procedure 17.[2]

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." *Id*. "No leave of court is required for the issuance of a subpoena duces

---

[2] The relevant provisions of Fed.R.Crim.P. 17(a) have previously been identified. *See* fn.1, *supra*.

9

tecum where the witness is subpoenaed to attend trial and give testimony, and is simply directed to bring certain documentary evidence to trial along with him or her." *United States v. Clark,* 2001 WL 759895, *1 (W.D. Va. June 27, 2001). However, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c)(2).

"A subpoena is unreasonable or oppressive if it is 'excessively broad' or 'overly vague.'" *United States v. Richardson,* 607 F.3d 357, 368 (4th Cir.), *cert. denied,* ___ U.S. ___, 131 S.Ct. 427, 178 L.Ed.2d 324 (2010); *see also United States v. Tosti*, 2010 WL 2734773, *2 (N.D. Cal. July 12, 2010) ("'Federal courts have recognized various ways in which a subpoena may be unreasonable or oppressive under Rule 17(c),' such as when a subpoena calls for production of irrelevant documents, is overly vague or excessively broad."). In that vein, "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951); *see also United States v. Shanahan,* 252 F.R.D. 536, 539 (E.D. Mo. 2008) ("Rule 17(c) was not intended to serve as a discovery device for criminal cases.").

In this case, the undersigned upholds the government's intent to not comply with the subpoena issued by Chris Vernon to the State Department and, therefore, quashes that subpoena for a number of reasons. First, as previously indicated, Vernon did not identify a particular State Department employee to testify and produce documents at the trial of this cause. Because the State Department's *Touhy* regulations speak in terms of

complying with a demand through an identified Department employee testifying and/or producing documents, *see* 22 C.F.R. §§ 172.4-172.8, and Rule 17 of the Federal Rules of Criminal Procedure requires that the subpoena command the witness to attend and testify, the instant subpoena issued by Chris Vernon is fatally deficient because it is not directed to a particular State Department employee/witness; thus, it is a demand/subpoena to which the State Department need not comply.

Even assuming the demand/subpoena is not fatally defective in this regard, the undersigned agrees with the movant that it need not comply with the subpoena since to do so would be unduly burdensome. A finding of burdensomeness is warranted, in part, because Vernon waited more than one month after the government disclosed Dimitrelos as one of its experts (*see* Doc. 197, at 4 ("A written summary of any testimony that any of the defendants or the Government intend to be utilized under Rules 702, 703, or 705 of the Federal Rules of Evidence should be disclosed not later than **December 2, 2011**.")) to request such information from the State Department. The failure to make an earlier "demand" forced the State Department, who (for whatever reason) did not receive the subpoena until January 24, 2012, a mere 6 days before trial, to eschew its normal authorization procedures under its *Touhy* regulations and turn the matter over to a Department of Justice attorney to inform the Court that the State Department cannot comply with the subpoena. Given that the State Department's receipt of Vernon's demand/subpoena came within a week of trial and would require an unidentified

Department employee to take away a significant amount of his or her time from the conduct of official Department business, as well as the performance of the Department's mission and duties, in order to sift through clearly sensitive documents (particularly as they relate to Pakistan and Turkey) in just a matter of a few days, a finding of burdensomeness is unassailable. Simply put, the undersigned will not require the State Department to comply with a subpoena for sensitive information on such short notice particularly since there is no way of knowing, at this point in time, whether Dimitrelos' connection with the State Department will come to light during the government's case-in-chief.

Finally, the undersigned will not require compliance with the subpoena because such compliance would be inappropriate under Federal Rule of Civil Procedure 17(c)(2). First, the subpoena is excessively broad and, therefore, unreasonable and oppressive because it does not confine itself to a particular (and reasonable) period of time. More importantly, given the "but not limited to" general language used in the subpoena, as well as the specific request for the "complete personnel file of [] Dimitrelos[,]"[3] it is clear that Chris Vernon is attempting to impermissibly use the Rule 17(c) subpoena as a

---

[3] The statement in the cover letter and, again, in the subpoena itself that Dimitrelos "might be artificially inflating his personal credibility and reliability, as well as the credibility and reliability of his own methods, by invoking the name of the United States State Department" (*see* Doc. 503, Attachments) makes all too clear that Vernon is only guessing and hoping that the requested records might turn up something useful. Such wishful thinking is a consummate sign that the movant is on an impermissible fishing expedition.

discovery device.

For all of these reasons, the undersigned will not require the State Department to comply with Chris Vernon's subpoena/demand; instead, the subpoena is **QUASHED**.

## **CONCLUSION**

The government's motion to quash (Doc. 488), as supplemented (*see* Doc. 503) is **GRANTED**.

**DONE** and **ORDERED** this the 31st day of January, 2012.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**